133 Nev., Advance Opinion 81

# IN THE SUPREME COURT OF THE STATE OF NEVADA

PETER GARDNER; CHRISTIAN
GARDNER, ON BEHALF OF MINOR
CHILD, L.G.,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
JERRY A. WIESE, DISTRICT JUDGE,
Respondents,
    and
HENDERSON WATER PARK, LLC,
D/B/A COWABUNGA BAY WATER
PARK; WEST COAST WATER PARKS,
LLC; AND DOUBLE OTT WATER
HOLDINGS, LLC,
Real Parties in Interest.

No. 70823

**FILED**

NOV 22 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus challenging a district court order denying a motion to amend a complaint.

*Petition granted.*

Campbell & Williams and J. Colby Williams, Donald J. Campbell, Philip R. Erwin, and Samuel R. Mirkovich, Las Vegas,
for Petitioners.

Thorndal, Armstrong, Delk, Balkenbush & Eisinger and Alexandra B. McLeod and Paul E. Eisinger, Las Vegas,
for Real Parties in Interest.

BEFORE DOUGLAS, GIBBONS and PICKERING, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

17-40346

*OPINION*

By the Court, GIBBONS, J.:

In this original proceeding, we are asked to consider whether seven managers of a limited liability company (LLC) are subject to suit for personal negligence as individual tortfeasors or under an alter ego theory of liability. We conclude that NRS 86.371 is not intended to shield members or managers from liability for personal negligence. We further conclude that the corporate alter ego doctrine applies to LLCs. Accordingly, we grant the petition and direct the district court to allow petitioners to amend their complaint.

*FACTS AND PROCEDURAL HISTORY*

Petitioners Peter and Christian Gardner, on behalf of their child L.G. (the Gardners), filed suit after L.G. suffered injuries resulting from a near-drowning at Cowabunga Bay Water Park in Henderson. The Gardners brought suit for negligence against Henderson Water Park, LLC, which does business as Cowabunga Bay Water Park (the Water Park), and its two managing members, West Coast Water Parks, LLC, and Double Ott Water Holdings, LLC (the member-LLCs). In turn, Orluff Opheikens, Slade Opheikens, Chet Opheikens, Shane Huish, Scott Huish, Craig Huish, and Tom Welch (the Managers) have an ownership interest in, or manage, the member-LLCs, and they also served on a management committee governing the Water Park.

Among other allegations in their initial complaint, the Gardners alleged the negligence of the Water Park and member-LLCs contributed to L.G.'s injuries because of the Water Park's inadequate staffing of lifeguards. After taking depositions, the Gardners moved for leave to amend their complaint to add the Managers of the Water Park as individual defendants. Specifically, the Gardners sought to assert direct

claims for negligence against the Managers in their individual capacities, and they sought to plead allegations supporting an alter ego theory of liability in order to pierce the corporate veil of the Water Park and the member-LLCs to reach the assets of the Managers. In support of their motion to amend their complaint, the Gardners quoted deposition testimony of one of the Managers stating the Water Park did not operate with 17 lifeguards at the wave pool as required by the Southern Nevada Health District.

The district court denied the Gardners' motion, concluding that amendment would be futile because the Managers were improper defendants. Specifically, the district court found that NRS 86.371 protected the Managers from any liabilities incurred by the various LLCs and Nevada's LLC statutes contained no alter ego exception to the protection offered by NRS 86.371.[1] This original writ petition followed.

---

[1]After the district court denied the Gardners' motion for leave to amend the complaint, the district court granted summary judgment in favor of the member-LLCs, dismissing the member-LLCs as improper defendants pursuant to NRS 86.381. The district court certified this order under NRCP 54(b), and the Gardners appealed that order. We affirmed the order granting summary judgment in *Gardner v. Henderson Water Park, LLC*, because the initial complaint did not allege any conduct by the member-LLCs aside from being members of the Water Park. 133 Nev., Adv. Op. 54, 399 P.3d 350, 352 (2017). As the amended complaint is written, however, it would appear to seek to bring the member-LLCs back into the litigation under alter ego theories. While we acknowledge that the timing of the orders in this matter may create procedural difficulties, we decline to consider them because these considerations are beyond the scope of this writ petition. *Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 229, 88 P.3d 840, 844 (2004) ("Our review in a writ proceeding is limited to the argument and documents provided by the parties."); *Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991) (stating that granting writ relief "is purely discretionary with this court").

## DISCUSSION

*Writ relief*

"This court has original jurisdiction to issue writs of mandamus . . . ." *MountainView Hosp., Inc. v. Eighth Judicial Dist. Court*, 128 Nev. 180, 184, 273 P.3d 861, 864 (2012). "A writ of mandamus is available to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008). Extraordinary relief may be available "[w]here there is no 'plain, speedy and adequate remedy in the ordinary course of law.'" *Helfstein v. Eighth Judicial Dist. Court*, 131 Nev., Adv. Op. 91, 362 P.3d 91, 94 (2015) (quoting NRS 34.170). Whether to consider a writ petition is solely within this court's discretion, and the petitioner bears the burden of demonstrating why extraordinary relief is warranted. *See We the People Nev. v. Miller*, 124 Nev. 874, 880, 192 P.3d 1166, 1170 (2008). In this matter, we exercise our discretion to consider this petition because it raises important and novel issues of law in need of clarification, "and considerations of sound judicial economy and administration militate in favor of granting the petition." *Int'l Game Tech.*, 124 Nev. at 197-98, 179 P.3d at 559.

*The district court abused its discretion by denying the Gardners' motion to amend their complaint*

In this petition, the Gardners challenge the district court's denial of leave to amend their complaint. NRCP 15(a) provides that leave to amend a complaint should "be freely given when justice so requires." *See also Nutton v. Sunset Station, Inc.*, 131 Nev., Adv. Op. 34, 357 P.3d 966, 975 (Ct. App. 2015) ("The liberality embodied in NRCP 15(a) requires courts to err on the side of caution and permit amendments that appear arguable or

even borderline, because denial of a proposed pleading amendment amounts to denial of the opportunity to explore any potential merit it might have had."). Leave to amend, however, "should not be granted if the proposed amendment would be futile." *Halcrow, Inc. v. Eighth Judicial Dist. Court*, 129 Nev. 394, 398, 302 P.3d 1148, 1152 (2013). This court reviews the denial of a motion for leave to amend a complaint for an abuse of discretion. *Holcomb Condo. Homeowners' Ass'n, Inc. v. Stewart Venture, LLC*, 129 Nev. 181, 191, 300 P.3d 124, 130-31 (2013).

Here, the district court determined amendment would be futile because the Managers were improper defendants under NRS 86.371 and the alter ego doctrine does not apply to LLCs. The Gardners argue the district court erred in relying on NRS 86.371 because the Gardners sought to assert tort claims against the Managers in their individual capacities. Additionally, the Gardners argue the district court erred in concluding the alter ego doctrine does not apply to LLCs. Thus, the Gardners seek a writ of mandamus compelling the district court to grant their motion to amend their complaint. For context, we review the nature of LLCs before reaching the parties' arguments.

*The limited liability company*

The LLC is a form of business organization in Nevada. *See* NRS Title 7, Chapter 86. The persons who own an LLC are its "members." *See* NRS 86.081-.091. The members can manage the LLC themselves or they can appoint a manager or group of managers to manage the company. *See* NRS 86.071; NRS 86.291. Accordingly, the statutes distinguish between member-managed and manager-managed LLCs, and managers of a manager-managed LLC may, but need not, be members of the LLC. *See* NRS 86.291.

An LLC is typically "created to provide a corporate-styled liability shield with pass-through tax benefits of a partnership." *Weddell v. H2O, Inc.*, 128 Nev. 94, 102, 271 P.3d 743, 748 (2012) (internal quotation marks omitted). An LLC "combines the flexibility of a contract-based form such as a partnership and the limited liability of a state-created form such as a corporation." H. Justin Pace, *Contracting Out of Fiduciary Duties in LLCs: Delaware Will Lead, but Will Anyone Follow?*, 16 Nev. L.J. 1085, 1086 (2016). However, "[u]nlike limited partners, LLC members do not lose their limited liability for participating in control of the business." 1 Robert R. Keatinge & Larry E. Ribstein, *Ribstein and Keatinge on Limited Liability Companies* § 1.6 (2016 ed.); *see also* NRS 88.430.

Pursuant to the statutes governing LLCs, "[u]nless otherwise provided in the articles of organization or an agreement signed by the member or manager to be charged, no member or manager of any limited-liability company formed under the laws of this State is individually liable for the debts or liabilities of the company." NRS 86.371. Furthermore, NRS 86.381 provides that "[a] member of a limited-liability company is not a proper party to proceedings by or against the company, except where the object is to enforce the member's right against or liability to the company." Accordingly, "no member or manager is vicariously liable for the obligations of the LLC solely by reason of being a member or manager." Keatinge & Ribstein, *supra*, § 1.5; *see also Gardner*, 133 Nev., Adv. Op. 54, 399 P.3d at 350 (holding "that, pursuant to NRS 86.371 and NRS 86.381, a member cannot be personally responsible for the LLC's liabilities solely by virtue of being a member"). Nevada's statutes governing LLCs provide no exception for an alter ego theory of liability, unlike the statutes governing corporations. *See* NRS 78.747(1) ("[N]o stockholder, director or officer of a

corporation is individually liable for a debt or liability of the corporation, unless the stockholder, director or officer acts as the alter ego of the corporation."). With this background in mind, we turn to the parties' arguments.

*Direct claims against the Managers*

The Gardners argue the district court erred in relying on NRS 86.371 because the Gardners sought to assert direct tort claims against the Managers. We agree.

Pursuant to NRS 86.371, a manager cannot be personally responsible in a negligence-based tort action against the LLC solely by virtue of being a manager. As we noted in *Gardner*, however, the statutes limiting personal liability of members and managers of an LLC for debts and obligations of the LLC are not intended to shield members or managers from liability for personal negligence. 133 Nev., Adv. Op. 54, 399 P.3d at 351. A plain reading of NRS 86.371 protects members and managers only from individual liability resulting from the debts or liabilities of the LLC, not liabilities incurred as a result of individual acts. Thus, the act of managing an LLC in and of itself cannot result in personal culpability because this notion would be in conflict with the manager's limited liability.

However, the Gardners' proposed amended complaint contained multiple allegations of individual negligence by the Managers concerning their direct knowledge and actions that threatened physical injury to patrons, including L.G. Specifically, the proposed amended complaint alleges that the Mangers, who had authority and control over the Water Park, owed personal duties to their patrons that they intentionally and willfully breached. Thus, the Gardners' proposed amended complaint alleges that the Managers breached a duty owed to L.G. arising out of their individual capacities. *See Cortez v. Nacco Material Handling Grp., Inc.*, 337

P.3d 111, 119 (Or. 2014) (indicating that a member "remains responsible for his or her acts or omissions to the extent those acts or omissions would be actionable against the member . . . if that person were acting in an individual capacity"). Therefore, we conclude that NRS 86.371 is not applicable, the amended complaint adequately states a negligence claim against the Managers in their individual capacities, and the district court abused its discretion by denying the Gardners' motion for leave to amend.

*The alter ego doctrine*

The Gardners also argue the alter ego doctrine should apply to LLCs so that the Gardners can pierce the veil of the Water Park and its member-LLCs to reach assets belonging to the Managers. We agree that the alter ego doctrine applies to LLCs.

States across the nation have consistently applied the alter ego doctrine to LLCs. *Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175, 1181 (D. Nev. 2008) (recognizing that federal and state courts have regularly applied corporate laws for piercing the corporate veil under the alter ego doctrine to LLCs). Many states have enacted LLC statutes that expressly apply the alter ego doctrine to LLCs. Cal. Corp. Code § 17703.04(b) (West 2014) ("A member of a limited liability company shall be subject to liability under the common law governing alter ego liability . . . ."); Colo. Rev. Stat. § 7-80-107(1) (2017) (applying caselaw that interprets the conditions and circumstances under which the corporate veil of a corporation may be pierced under Colorado law to LLCs).

Other courts, however, have found the alter ego doctrine applies to LLCs absent an express statutory provision. *BLD Prods., Ltd. v. Tech. Plastics of Or., LLC*, No. 05-556-KI, 2006 WL 3628062, at *3 (D. Or. Dec. 11, 2006) (applying Oregon law and finding the veil-piercing doctrine may be applied to LLCs under the same circumstances in which it is applied to

Supreme Court
OF
Nevada

(O) 1947A

corporations); *Westmeyer v. Flynn*, 889 N.E.2d 671, 678 (Ill. App. Ct. 2008) (holding piercing the corporate veil applies to an LLC and the Illinois LLC Act "does not bar the other bases for corporate veil piercing, such as alter ego, fraud or undercapitalization"); *Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467-69 (Ky. Ct. App. 2012) (recognizing piercing of veil for an LLC in cases of fraud, illegality, or other unlawfulness); *Bottom Line Equip., LLC v. BZ Equip., LLC*, 60 So. 3d 632, 636 (La. Ct. App. 2011) ("The theory of piercing the corporate veil applies to limited liability companies and is not limited to corporations.").

This court has "assume[d], without deciding, that the [alter ego] statute applies [to LLCs]." *See Webb v. Shull*, 128 Nev. 85, 92 n.3, 270 P.3d 1266, 1271 n.3 (2012). Several other courts have made the same assumption. *See, e.g.*, *Volvo Constr. Equip. Rents, Inc. v. NRL Rentals, LLC*, 614 F. App'x 876, 878 n.1, 880 (9th Cir. 2015) ("assum[ing], without deciding, that § 78.747 governs the scope of LLC member liability in Nevada," but ultimately holding the LLC members were not personally liable under the alter ego theory); *Pharmaplast S.A.E. v. Zeus Med. Holdings, LLC*, No. 2:15-cv-002432-JAD-PAL, 2017 WL 985646, at *3 (D. Nev. Mar. 14, 2017) (assuming, without deciding, "that the alter-ego principles that permit courts to pierce corporate veils also permit them to pierce LLC veils in Nevada," but ultimately dismissing the claims brought under the alter ego theory); *but see In re Giampietro*, 317 B.R. 841, 846 (Bankr. D. Nev. 2004) (recognizing that whether the alter ego doctrine applies to LLCs in Nevada is a question of first impression and predicting "it highly likely that Nevada courts would recognize the extension of the alter ego doctrine to members of limited liability companies").

The alter ego doctrine is a judicially created doctrine that the Nevada Legislature codified for corporations in 2001. *See* NRS 78.747. Before it was codified, this court recognized that "the essence of the alter ego doctrine is to do justice whenever it appears that the protections provided by the corporate form are being abused." *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 903, 8 P.3d 841, 845-46 (2000) (internal quotation marks omitted). Nevada's LLC statutes were enacted in 1991, prior to the Legislature's codification of the corporate alter ego doctrine. *See* 1991 Nev. Stat., ch. 442, at 1184. The Legislature contemplated that LLCs would be subject to the same then judicially applied doctrine of alter ego as corporations. *See* Hearing on A.B. 655 Before the Assembly Judiciary Comm., 66th Leg. (Nev., May 21, 1991). Nothing in the Legislature's codification of the alter ego doctrine for corporations indicates that the Legislature was considering the LLC statutes or that it intended, by negative-implication, to apply the alter ego doctrine to corporations, but not LLCs. *See* 2001 Nev. Stat., ch. 601, at 3170; *see also* Hearing on S.B. 577 Before the Senate Judiciary Comm., 71st Leg. (Nev., May 22, 2001); Hearing on S.B. 577 Before the Senate Judiciary Comm., 71st Leg. (Nev., May 25, 2001); Hearing on S.B. 577 Before the Assembly Judiciary Comm., 71st Leg. (Nev., May 30, 2001). Therefore, we decline to interpret the Legislature's enactment of NRS 78.747 as, by omission, precluding the application of the alter ego doctrine to LLCs.

As recognized by courts across the country, LLCs provide the same sort of possibilities for abuse as corporations, and creditors of LLCs need the same ability to pierce the LLCs' veil when such abuse exists. *See Giampietro*, 317 B.R. at 846 ("The varieties of fraud and injustice that the alter ego doctrine was designed to redress can be equally exploited through

limited liability companies."). Thus, we hold the alter ego doctrine applies to LLCs and the district court erred in denying the Gardners' motion to amend their complaint to allege that the Managers were subject to liability through the alter ego doctrine.

## CONCLUSION

Accordingly, for the reasons set forth above, we grant the petition and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate its order denying the Gardners' motion to amend their complaint and to allow the Gardners to amend their complaint.

_____, J.
Gibbons

We concur:

_____, J.
Douglas

_____, J.
Pickering